1  **Lisanne M. Butterfield**
   OSB No. 91368
2  lbutterfield@carrbutterfield.com
   **CARR BUTTERFIELD, LLC**
3  155 B. Avenue, Suite 240
   Lake Oswego, OR 97034
4  Telephone: 503-635-5244
   Facsimile: 503-635-2955
5  Attorneys for Zing Zing Toys, Inc.
      and Ozwest, Inc.
6

RECVD 10 JUL 23 10:20USDC-ORP

7

### IN THE UNITED STATES DISTRICT COURT

8

### DISTRICT OF OREGON

9

| | |
|---|---|
| **ZING TOYS, INC.**, an Oregon corporation, | Case CV '10 - 863 HA |
| Plaintiff, | **COMPLAINT** |
| vs. | 1. **FEDERAL TRADEMARK AND PATENT INFRINGEMENT** |
| **ZURU, LLC**, an Oregon limited liability company, aka and/or dba **ZURU INC.**, **ZURU.COM, ZURU-INC, ZURU LIMITED, GURU GLOBAL LIMITED, GURU TOYS, GURU TOYS, LTD., ZURU TOYS, ; ANNA JANE MOWBRAY,** an individual; **MATTHEW PETER MOWBRAY,** an individual; and **NICHOLAS JAMES MOWBRAY,** an individual; and **JOHN DOES 1 – 10,** | 2. **FEDERAL TRADEMARK COUNTERFEITING** |
| | 3. **FEDERAL TRADEMARK DILUTION / CYBERPIRACY** |
| | 4. **STATE TRADEMARK DILUTION** |
| | 5. **UNLAWFUL IMPORTATION** |
| | 6. **COMMON LAW TRADEMARK INFRINGEMENT** |
| Defendants. | 7. **FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN** |
| | 8. **UNFAIR COMPETITION – STATE LAW CLAIM** |
| | 9. **MISUSE OF TRADE DRESS** |
| | 10. **UNJUST ENRICHMENT** |
| | 11. **VIOLATION OF OREGON TRADE SECRETS ACT** |
| | 12. **BREACH OF CONTRACT** |
| | 13. **CONVERSION** |
| | *DEMAND FOR JURY TRIAL* |

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

Plaintiff, ZING TOYS, INC. ("Zing"), for its Complaint against ZURU, LLC, aka ZURU INC., ZURU.COM, ZURU-INC, ZURU LIMITED, GURU GLOBAL LIMITED, GURU TOYS, GURU TOYS, LTD., and ZURU TOYS, collectively dba "ZURU", and against the individuals MATTHEW PETER MOWBRAY, NICHOLAS JAMES MOWBRAY, ANNA JANE MOWBRAY, and JOHN DOES 1-10, (all Defendants are hereinafter collectively referred to as "Zuru"), states and alleges as follows:

## JURISDICTION AND VENUE

1.

This is an action for trademark infringement, copyright and patent infringement, counterfeit packaging, trade dress, and unfair competition under the laws of the United States (codified at 15 U.S.C. §§1051, 1117, 1124 and 1125 *et seq.*).  Zing also asserts claims arising under Oregon laws and Zing seeks injunctive relief.

2.

This court has subject matter jurisdiction pursuant to 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338.  An actual case or controversy exists between the parties at least because Zuru has violated Zing's patent and trademark rights, and Zuru has informed Zing of its intent to continue the alleged infringing activity that constitutes unfair competition, unlawful trade practices, conversion, and that violates Zing's intellectual property rights, and Zuru continues to do so.

3.

This court has supplemental pendant jurisdiction over Zing's state law claims pursuant to the provisions of 28 U.S.C. §1338 (b) insofar as the claims are joined with substantial and related federal claims arising under the patent, trademark and copyright laws of the United

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

States.

4.

This Court has personal jurisdiction over Defendants Zuru because, at all times relevant, Zuru has and had substantial contacts in the State of Oregon and the contacts with the forum state related to the claims in this action, and Zuru engaged in the alleged wrongful acts in the State of Oregon.

5.

Venue in this judicial district is proper under 28 U.S.C. §§1391 (b) and (c).

**PARTIES**

6.

Plaintiff Zing is an Oregon corporation with its principal place of business in Banks, Oregon.

7.

Ozwest is an Oregon corporation licensed to do business in the state of Oregon. Ozwest is an entity affiliated with Zing. Zing and Ozwest design, manufacture, license, and sell a variety of toys, including foam toys.

8.

Defendant Zuru is a limited liability company registered under the laws of the state of Oregon. Based on information and belief, Zuru has a business location in Washington County, Oregon. Zuru sells toys and sporting goods products in over 40 countries world-wide, including the United States and China. Based on information and belief, Zuru has an active research and development center in Phoenix, Arizona. Zuru, LLC is also known by and/or doing business as other business entity names, to-wit: Zuru Inc., Zuru.com, Zuru-Inc, Zuru

Page 3 – COMPLAINT

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

Limited, Guru Global Limited, Guru Toys, Guru Toys, Ltd., and Zuru Toys. Defendants Matthew P. Mowbray, Anna J. Mowbray, and Nicholas J. Mowbray are principals, officers, an and/or controlling shareholders of Defendant Zuru. (Collectively, all defendants are hereinafter referred to as "Zuru.")

9.

Steve Walterscheid ("Walterscheid"), a resident of Oregon and citizen of the United States, is the President of Zing.

10.

Peter Cummings ("Cummings"), a natural born citizen of Australia and resident of Oregon, is a consultant to Zing. At all times relevant, Cummings was contracted to manage the design/invention and production aspects of Zing's operations in the United States and worldwide. It is based upon Cummings' design and production expertise, toy manufacturing techniques and valuable relationships with toy manufacturing facilities in mainland China which formed the basis of Zing's business relationship with Zuru.

### STATEMENT OF FACTS COMMON TO ALL COUNTS

11.

For at least ten years, Walterscheid and Cummings have been engaged in the business of designing, licensing, manufacturing and selling toy products in the United States and throughout the World. Since at least as early as 2008, Zing designed, developed, marketed, advertised, licensed, distributed and sold Zing's original toy products, including, but not limited to, ZeeBeez (and the entire ZeeBeez product line), Jumpz, HaiRazin' Hedz, Roomarang, RoomBoom, Zoomarang, Copterang, Helirang, Zartz (and the entire Zartz product line), PopShotz Blaster, Aquaglider, Zyclone and Mega Jumpz in interstate commerce and in

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

1  other foreign markets in Europe, North America, South America, South Africa, Australia and

2  worldwide. (These toy products are hereinafter collectively referred to as the "Zing Toy

3  Products.")

4                                         12.

5      Zing Toy Products are unique in design, function and product packaging. Zing and

6  Ozwest are extremely cautious about adding new items to the Zing Toy Product line and

7  branding. Since at least early 2009, Zing adopted and used the "Zing" mark in the State of

8  Oregon, and throughout the United States and the World.

9

10                                        13.

11     On or about May 26, 2009, Zing obtained federal registration for the trademark "Zing",

12  which is also a service mark as that term is defined by the laws of the United States and

13  Oregon. "Zing" is a registered mark documented as United States Patent & Trademark

14  Registration Number 3626244, (Certificate of which is attached as Exhibit A), which is owned

15  by Zing and used for custom toy manufacturing purposes. "Zing!" is a registered mark,

16  documented as United States Patent & Trademark Number 3469484 (Certificate of which is

17  attached as Exhibit B), which is used for toy products, board games, parlor games and party

18  games. Pursuant to ORS 647.015, *et. seq.*, Zing also applied for registration of the "Zing"

19

20  trademark with the State of Oregon.

21                                        14.

22     At all times relevant to this action, Zing possessed all rights, title and interest in the

23  trade name "Zing." Due to the unique toy branding, and originality and quality of its toy

24  products and novelty items, the "Zing" trade name carries with it distinctive qualities of

25  favorable associational value.

26

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

15.

Zing is the owner of the "ZING" stylized image mark, which is pending United States Trademark Application 77/362152 for "pop-up toys."

16.

Zing is the owner of the "ZING" stylized image mark which is pending United States Trademark Application 77/658499 for "hand powered non-mechanical flying toys."

17.

Zing is the owner of the trademark "ZING AIR", which is documented as pending United States Trademark Application 85/073890 for the following toy products and novelty items: "Toy Guns," "Toy Pistols," "Toy Weapons," "Flying Discs" and hand powered non-mechanical flying toys."

18.

Dating back to at least as early as 2007, Zing granted Zuru non-exclusive, limited, revocable rights to distribute for sale in limited geographic areas of Asia, Europe, Central America, South America and North America (collectively, "the Zing/Zuru Limited Distribution Products"). Certain specifically identified Zing Toy Products, which Zing exclusively invented ("Mega Jumpz") and for which Zing had licensed from an outside inventor (Zyclone), Zing agreed to allow Zuru to both manufacture and distribute in limited geographic areas. Zuru also distributed other Zing Toy Products, including the Zeebeez, Baldeez, Sporteez, Fro Bro ZeeBeez, Jump, HaiRazin', Hedz, Roomarang, RoomBoom, Zoomarang, Copeterang, Helirang, PopShotz Blaster, and Aquaglider. Limited and revocable distribution arrangements were made in regard to Zuru's entitlement to manufacture and distribute the Zing/Zuru Limited Distribution Products.

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

19.

Pursuant to an exclusive license from John W. Hunter, Zing is also the beneficial owner of the "Zyclone", a Ring Airfoil Launching System, holding the United States Patent number 6,742,509 (Certificate of which is attached as Exhibit F).

20.

Zing claims an exclusive copyright for the original artwork of the stylized logos "ZING" and "ZING AIR." (*See* Exhibit E, original artwork for "ZING" and "ZING AIR" logo.) Since or about January 5, 2010, Zuru improperly, and without Zing's consent or authority, misappropriated and attempted to convert to its own use the "Zing" trademark and "ZING AIR" logo design, uniquely stylized lettering and configuration, thereby causing consumer confusion and dilution of Zing's goodwill in the market place.  Specifically, on or about June 15, 2010, and continuing through today, based on information and belief, Zuru misappropriated for its own use the Zing trade dress, trademark, logo and product design on the packaging of a product called the "Wazooka".

21.

By misappropriating and using for its own benefit the packaging, trade dress and uniquely stylized lettering of Zing, Zuru infringed upon proprietary trade dress rights and diluted the value of Zing's uniquely stylized "ZING AIR" logo.

22.

By misappropriating for its own unauthorized use the designs and packaging unique to the Zing Toy Products, Zuru has attempted to benefit from Zing's unique product design and packaging, and product branding and product placement at retail and wholesale distribution. Zuru is doing business and committing acts of trademark infringement, patent misuse and

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

unfair competition in the United States, including Oregon.

23.

Zing exclusively originated, designed, promoted, and is currently in the process of seeking United States copyright and patent protection for its original toy products identified above (and hereinafter referred to as the "Zing Toy Products"). Zing is the owner of the rights, title, and interest to sue those who violate its copyrighted work. From 2006 and at all times relevant, Zing was the exclusive distributor of the "Wazooka" product in the United States.

24.

Since at least early 2009, Zuru and Zing agreed that pricing for all Zing/Zuru Limited Distribution Products was respectively set at a per unit cost, with an express promise by Zuru to timely pay Zing 20% in royalty fees based upon the wholesale cost for each unit sold at the time of shipping. Zuru also promised to timely furnish Zing quarterly reports to reconcile and substantiate the number of units sold and per unit costs for each Zing/Zuru Limited Distribution Product sold/charged by Zuru, or otherwise distributed in any way to market by Zuru.

25.

For a limited number of the Zing/Zuru Limited Distribution Products (specifically, the Zyclone and Mega Jumpz), Zing agreed to sell these products to Zuru for the limited purpose of distribution to certain pre-identified markets, provided that Zuru complied with the set, agreed-upon pricing and volume structure, which was specifically and expressly communicated by Zing to Zuru. Zuru initially agreed, but later failed and refused to comply with the pricing and volume structure set by Zing, and Zing repeatedly notified Zuru that terms of the limited distribution rights were contingent upon the set pricing and volume formula.

///

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

26.

In early 2010, Zuru violated the Limited Distribution Agreement by ordering and accepting Zing toy products from Zing's factory partner (based in China) without the knowledge, consent or approval of Zing. Zing became aware of this when its factory partner directly invoiced Zing for the product directly ordered by Zuru. At issue specifically under the Zing/Zuru Limited Distribution Agreement was the "Zeebeez." Zing granted Zuru permission to purchase the ZING AIR line of Toys, specifically the RoomBoom, Zoomarang, Copterang, Helirang and Popshotz Blaster, directly from Zing's partner factory, Changhui and compensate Zing the set price of 20% of the selling price of each toy unit at the time of shipping from China. Zuru expressly agreed, but failed, to compensate Zing the set price of 20% of the selling price of each toy unit sold, which Zuru had agreed would be paid at the time product was shipped. To this date, despite repeated demands for same, Zuru has failed and refused to compensate Zing for the said product purchased directly from Zing's partner, Changhui.

27.

On or about February 1, 2010, through June 1, 2010, without consent, approval or agreement from Zing, Zuru unilaterally imposed a 7% "deduction" in the total amount of $13,107.78, which Zuru deducted from amounts otherwise due to Zing from Zuru. Zuru unilaterally imposed the "deduction" without consent or agreement from Zing and Zuru did so based upon Zuru's claim that the Changhui factory raised prices by that amount. The unpaid amounts due Zing from Zuru through June 18, 2010, for sales of Zing's products shall be proven at trial, but is estimated to be an amount not less than $200,000 USD, plus interest, late fees, attorney's fees and costs.

///

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

28.

Despite repeated demands from Zing, Zuru has failed and refused to honor its payment obligations, including but not limited to the payments of 20% above the per unit sale costs at the time of shipping, payment of which was due and owing from Zuru to Zing at the time of shipment.

29.

The Zyclone is a Zing licensed product with patent protection throughout Europe, the United States, Canada and other markets worldwide. For the purposes of the Limited Distribution Agreement, Zing granted Zuru the temporary, revocable and limited right to manufacture and distribute Zing's exclusive products including the "Zyclone." At all times relevant, the distribution rights were subject to an express, agreed-upon pricing structure that preserved Zing's entitlement to no less than 50% of the realized profit obtained by Zuru based upon the actual cost and volume of the product manufactured and ultimately distributed for sale by Zuru. Zing and Zuru agreed to a set break down of the profit-split based upon whether the product was ultimately sold through a distributor vs. direct retail.

30.

Despite its promises, Zuru breached its duty of good faith and fair dealing by charging Zing exorbitant and unreasonably inflated factory costs to manufacture and distribute Zing's product (e.g., the Zyclone product). The unreasonably inflated factory costs charged by Zuru to Zing were inconsistent with and considerably higher than competing manufacturing estimates that Zing secured from other similarly-equipped Chinese manufacturers. Due to the unfair and above-market pricing, on or about December 1, 2009, Zing discontinued its reliance upon Zuru to manufacture the Zyclone product, and Zing began manufacturing at other

Page 10 – COMPLAINT

facilities outside of Zuru.

31.

On or about April 23, 2010, upon Zuru's request for payment, Zing purchased from Zuru certain toy mold/tooling for production of the Helirang, Zoomarang and RoomBoom (the "Molds"), the control, possession and return of which remain at issue in this court action. Specifically, Zing paid Zuru the total amount of $17,100 USD, proof of payment of which is attached as Exhibit G.

32.

On or about July 14, 2009, upon Zuru's request for payment, Zing purchased from Zuru certain toy tooling machinery and molds for production of the "Zartz Paddle" and the "Zyclone" ring airfoil rings parts the control, possession and return of which remain at issue in this court action. These items included the Zyclone ring airfoil rings and foam cartridge. In May 2009, upon Zuru's demand for payment, Zing paid Zuru the total amount of $9,662.71 as valuable consideration for purchase of the Zyclone tooling ($7,567.25 for the Zyclone molds and $2,095.46 for the Zartz paddle molds, proof of payment in the total amount of $9,662.71 is attached as Exhibit C).

33.

On or about May 29, 2009, Zing purchased from Zuru, and tendered payment to Zuru, in the amount of $10,831.01, for two (2) machines originally used for manufacturing and production of the Roomarang, but which are now used for manufacturing parts of the Zyclone toy product. (The tooling machinery and molds for the "Zartz paddle," the "Zyclone" Ring Airfoil Launching System and the two machines for manufacturing parts of the Zyclone product are collectively referred to hereinafter as the "Zyclone tooling," receipt for payments of

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

which, in the total amount of $10,831.01 is attached as Exhibit D).

34.

As a consequence of Zuru's unfair market pricing practice, Zing had no choice but to retool at great expense in order to make the cost of the Zyclone reasonable for resale. Despite its express promises, and demand from Zing, Zuru failed and refused to tender or otherwise pay to Zing the agreed-upon 50% profit split from that quantity of the Zyclone product that Zuru manufactured/distributed before Zing retooled and switched to another manufacturer.

35.

The "Mega Jumpz" is a Zing Toy Product invented by Walterscheid, who expressly reserved all rights, title and interest to the product. At all times relevant to this action, "Mega Jumpz" is and was a Zing-licensed product with patent pending protection throughout the United States.

36.

For the purposes of the Limited Distribution Agreement, Zing granted Zuru the temporary, revocable and limited right to manufacture and distribute Zing's exclusive product called the "Mega Jumpz," subject to an express, agreed upon pricing structure that preserved Zing's entitlement to no less than 50% of the realized profit obtained by Zuru based upon the actual cost and volume of the product manufactured and ultimately distributed for sale by Zuru. Zing and Zuru agreed to a pro-rated profit-split based upon whether the product was ultimately sold through a distributor vs. direct retail.

37.

Zuru breached its duty of good faith and fair dealing by charging Zing exorbitant and unreasonably inflated factory costs to manufacture the "Mega Jumpz" product for distribution.

Page 12 – COMPLAINT

1   The unreasonably inflated factory costs were inconsistent with and considerably higher than

2   competing manufacturing estimates that Zing secured from other similarly-equipped Chinese

3   manufacturers.

4                                              38.

5        Based upon Zuru's above-alleged actions and its stated intentions to produce products

6   (Helirang and Zartz) in Zuru's own factory or with a third party, Zing immediately demanded

7   and that Zing's previously-purchased Molds and Zyclone Tooling be returned to Zing.  Zing

8   informed Zuru that any unauthorized manufacture of Zing's toy products by Zuru would not be

9   tolerated.  Zing expressly demanded that Zuru return the Molds and Zyclone Tooling to Zing

10  within one (1) week, or all arrangements for distribution and manufacturing between Zing and

11  Zuru would be null and void.  Zing requested that all monies owed to Zing be immediately paid

12  by Zuru.  The Molds were not returned, the monies owed by Zuru have not been paid.  To date,

13  Zuru has failed and refused to pay Zing for Zing Toy Products sold and distributed by Zuru.

14  Because of Zuru's continuing breach of the Limited Distribution Agreement, on or about June

15  30, 2010, due to the Molds being withheld and monies still due and unpaid by Zuru, Zuru's

16  distribution and manufacture of Zing's goods as the Limited Distribution Agreement was

17  effectively terminated.

18

19                                             39.

20       On or about January 5, 2010, and on several dates thereafter, Zing notified Zuru of

21  Zing's original art work, toy branding, uniquely stylized packaging, intellectual property rights

22  (registered, reserved and pending) in the Zing Toy Products, including the marks and artwork

23  on the "Wazooka" packaging.

24

25  ///

26

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

40.

Based on information and belief, since at least September 11, 2009, and continuing through at least January 26, 2010, without the authority or consent of Zing, Zuru misappropriated Zing's marks, logos, original artworks, trade dress and packaging associated with the Zing Toy Products, including, but not limited to, the "Wazooka".

41.

On or about January 6, 2010, Zing made demand upon Zuru to cease and desist from the use and misappropriation of Zing's marks, logo and packaging associated with the Zing Toy Products. Zuru responded by expressly acknowledging to Zing that the trademark and logo were indeed unique to Zing, and Zuru promised to immediately remove the "ZING AIR" logo and artwork from the "Wazooka" packaging. Despite repeated demand from Zing, Zuru failed to remove the Zing Air logo and artwork from the "Wazooka" packaging, Zuru's website, Zuru's customer's websites, and printed marketing and sales brochures. Based on information and belief, Zuru continued (at least until January 26, 2010, and perhaps beyond that date) to infringe upon Zing's trademark, logos, uniquely stylized artwork by shipping, selling, marketing and distributing the "Wazooka" throughout the United States and in international markets.

42.

On or about June 15, 2010, Zing learned that without authority, consent or stipulation, Zuru has continued, and intends to continue, to manufacture, import, and sell the Zing Toy Products and specifically the "Wazooka," which bears "Zing" marks and art-work, without compensating Zing for same.

///

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

43.

As a direct consequence of Zuru's sales tactics and unfair trade competition, Zing's "Wazooka" product eventually failed. Specifically, Zuru intentionally set unfair pricing structures to undercut Zing by virtue of Zuru's direct retails sales offers with FOB China pricing. As a direct consequence of Zuru's deliberate and willful acts, Zing was also forced to liquidate its stock of "Wazookas" at below cost close-out pricing. Zing therefore had reason to discontinue the business relationship with Zuru.

44.

Based on information and belief, Zuru continues to harm Zing by improperly, and without authority, marketing, distributing and selling the "Wazooka" product in the United States and in the international market with Zing marks, branding and artwork. Without consent, approval or agreement from Zing, Zuru continues to bring the "Wazooka" to market without compensation to Zing for use of its valuable branding, marks and original artwork, and Zing continues to suffer damages thereby. The exact amount of these losses will be proven at trial, but are estimated to be an amount not less than $500,000 USD.

45.

Zuru expressly informed Zing that Zuru intends to willfully and deliberately violate and ignore Zing's intellectual property rights, including but not limited to, Zing's unique trade dress by using exclusively-designed ZING AIR artwork, color schemes, and packaging on one or more products similar to the Zing Toy Products. Specifically, as of June 15, 2010, Zuru informed Zing representatives that Zuru intends to manufacture and distribute both the "Helirang" and "Zartz," and based upon information and belief, Zuru continues to do so without the consent, authority or agreement from Zing.

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

46.

Without the consent, authority or agreement from Zing, and over express objection from Zing, Zuru has continued to use the Zing trademarks and original artwork on Zuru's toy packaging, despite the fact that Zuru knew, or should have known, that Zing claim a protected copyrighted interest in the Zing Toy Product packaging, specifically the "Wazooka".

47.

As of at least as early as February 1, 2009, Zing owned the Molds used by Zuru to exclusively manufacture and distribute Zing's specialized toy products, including the ZING AIR product line.  The Molds are located in a factory (the CMS Factory - Changhui) in China. Zing, absent any legally-binding obligation to do so, permitted Zuru to purchase the ZING AIR items – *e.g.,* RoomBoom, Zoomarang, Copterang, Helirang, Popshotz Blaster and Zartz -- directly from Changhui.

48.

Zing and Zuru agreed that in exchange for the direct factory purchase by Zuru of the Zing's products, Zuru would pay Zing 20% of the sale cost at the time of shipping.  Zuru was commissioned by Zing to tool extra "Helirang," "Zoomarang" and "RoomBoom" Molds based upon Zing designs, for which Zing paid in full.  These Molds were faulty and returned to Zuru for repair.  On or about June 16, 2010, Zuru notified Zing that Zuru intended to keep possession of the Molds and Zuru also informed Zing that Zuru intended to make "Zartz" Molds in order to copy manufacture the Zing Toy Products, and Zuru also threatened to alternatively have a third-party manufacture the Zing Toy Products, all in violation of Zing's exclusive intellectual property rights.

///

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

49.

Zing promptly and expressly objected to Zuru's unauthorized use of the "Helirang" Molds and Zing demanded that Zuru return to Zing's representatives *all* Molds for which Zing paid valuable consideration and which Zing needed to manufacture and distribute Zing Toy Products. Without consent or authority from Zing, on or about June 17, 2010, Zuru expressly informed Zing that Zuru would, and eventually did attempt to, "takeover the manufacturing" of ZING AIR production and hold without Zing authorization the Molds for Zuru's piracy and unauthorized sale of the Zing Toy Products at issue.

50.

Zuru has informed Zing that Zuru intends to willfully and deliberately violate and ignore Zing's intellectual property rights, specifically by infringing upon Zing's uniquely-stylized trade dress, packaging and toy branding. On or about June 16, 2010, Zuru informed Zing that Zuru intends to continue, and has in fact continued, to manufacture and distribute the Zing-originally designed toy products "Helirang" and "Zartz," despite Zing's bonafide claim of intellectual property rights in same.

51.

Without Zing's consent or approval, and in willful violation of Zing's intellectual property rights, from at least as early as January 5, 2010, through present, Zuru has misappropriated Zing's unique "ZING AIR" logo at least 250 times on each package sold, in toy packaging sold and distributed by Zuru on its websites and elsewhere.

52.

From early January 2010, and more recently, Zing notified Zuru that Zuru had violated Zing's copyrights and trademarks by the misuse of the "ZING AIR" logo. In response, Zuru

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

acknowledged the violation and promised to rectify it by removing the offending packaging and references to the "ZING AIR" logo from Zuru's "Wazooka" product packaging. As of this date, Zuru has failed and refused to honor its promises to comply. This continuing misappropriation alone directly harmed, and continues to harm, Zing by diluting the value of its unique trade dress and packaging, and by the damage that Zuru caused to Zing's customer good will due to the market confusion and counterfeited art work that is, and at all times was, unique to Zing. Zing has been damaged in an amount to be proven at trial, but not less than $500,000, as a result of Zuru's unauthorized use of the "ZING AIR" logo.

53.

On several occasions, including, but not limited to January 6, 2010, Zing expressly notified Zuru that Zuru had violated Zing's intellectual property rights and proprietary rights (particularly the misuse of Zing's "ZING AIR" logo, and patented toy products, stylized packaging and branded trade colors).

54.

On several occasions, including but not limited to, June 19, 2010, Zing also made a demand upon Zuru to cease and desist from the unauthorized use of Zing's Molds (that were uniquely-designed to make Zing Toy Products, including but not limited to the "Helirang" and "Zartz"). Despite repeated demands by Zing, Zuru failed and refused to discontinue its improper and unauthorized use of Zing's Molds, stylized packaging and branded trade colors causing confusion in the market place and dilution of the market value of Zing's exclusive specialized trade dress. Despite repeated demands from Zing, Zuru has also failed and refused to return the Molds to Zing.

///

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

55.

On several occasions, including via email on June 24, 2010, Zing expressly informed Zuru that Zuru was infringing upon Zing's intellectual property and proprietary rights by virtue of Zuru's unauthorized manufacturing of Zing Toy Products at the Zuru factory, or by a third-party factory. Zing demanded that Zuru cease and desist from such unlawful conduct, but Zuru has failed and refused to comply. Based on information and belief, Zuru continues to convert for its own purposes the property of Zing, specifically the unique Molds used to make Zing Toy Products.

56.

On more than one occasion, including, but not limited to, June 24, 2010, Zing expressly notified Zuru that Zuru had infringed, and was continuing to infringe, upon Zing's copyrights, trademarks and patented toy products in several ways, including Zuru's obvious and documented unauthorized use of Zing's stylized packaging, trademark and trade colors for Zuru's knock-off toy products. At that time, Zing also expressly demanded, but Zuru failed and refused, to cease and desist from its unauthorized use of Zing's intellectual property and mold/tooling equipment and Zing demanded return of Zuru's unauthorized possession and control of Zing's Molds, and compensation for the unauthorized use of same. As of this date, Zuru has failed and refused to honor Zing's demand that the Molds and tooling be returned within seven (7) days.

57.

In addition to the demand for return of the Molds, Zing also demanded that Zuru immediately effectuate payment to Zing for all royalties and sale profits due Zing from Zuru for Zing's product sold. Zuru has failed and refused to comply with its obligations to make

Page 19 – COMPLAINT

1  payments, as promised.

2                                    58.

3          On or about June 24, 2010, and on multiple dates prior, Zing expressly demanded that

4  Zuru immediately respond as follows:

5          a.      Immediately cease and desist the unauthorized manufacturing,

6  distribution and sale of any and all Zing Toy Products;

7          b.      Immediately correct all of Zuru's print media and advertising which

8  includes misuse of Zing's trade dress, packaging and patented products, and which dilutes the

9
10 value of Zing's trade name and reputation in the industry;

11         c.      Immediately modify and correct all unauthorized use of Zing's

12 copyrighted materials, including but not limited to any Pantone-colored Zuru product that

13 contains Zing's distinctive use of Green and Blue combination;

14         d.      Compensate Zing for all monies due Zing for products already shipped

15 by Zuru: and

16         e.      Confirm in writing that Zuru will cease and desist from its improper

17
18 manufacture and distribution of Zing's items without express authorization from Zing's

19 principles, Walterscheid and/or consultant Cummings.

20                                   59.

21         In response to the above demands, Zuru failed and refused to comply and requested that

22 Zing "please sue us."

23 ///

24 ///

25 ///

26

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

## COUNT I

**(Federal Trademark and Patent Infringement – 15. U.S.C. §1114 and 35 U.S.C. §271)**

60.

Zing re-alleges and incorporates Paragraphs 1 through 59 above, as though fully set forth herein.

61.

By virtue of the repeated and express notice of Zing's rights provided by Zing to Zuru, Zuru had actual and constructive knowledge of the trademarks registered to Zing Toy Products, Registration 3626244 (*see* Exhibit A). Zuru was informed that since at least as early as January 5, 2010, Zing first used the unique trademark and claimed copyrights to the Zing Toy Products and original art work of the "ZING AIR" logo. Based on information and belief, Zuru also had knowledge of Zing's patent rights in the "Zyclone," and is believed to be misappropriating and infringing upon the patent for the "Zyclone" product, by using, making, offering to sell, or selling the Zyclone product without Zing's consent or authorization.

62.

The acts of Zuru as described above constitute an infringement of Zing's rights to use its federally-registered marks and patents, with consequential damages to Zing, which include, but are not limited to, the loss of business revenue and goodwill associated with the Zing's mark and the original "ZING AIR" logo and for the "Zyclone" product, all of which specifically gives rise to this action under 15 U.S.C. §1114 and 35 U.S.C. §271.

63.

By reason of the foregoing, Zing is entitled to injunctive relief to prevent Zuru from commercially manufacturing, using, selling, or offering to sell within the United States or to

Page 21 – COMPLAINT

1  import into the United States any of Zing's products, including but not limited to the Zing Toy

2  Products that have the "ZING AIR" logo, and including the Zyclone toy product.   Zing is

3  further entitled to damages proven to be caused by reason of Zuru's acts of infringement, and

4  to recover enhanced damages based upon the willful, intentional, and/or grossly negligent

5  activities of Zuru.  The exact amount of these claimed damages are unknown at this time, but

6  will be proven at trial and amount to no less than $500,000.

7
## COUNT II
8
### (Federal Trademark Counterfeiting – 15 U.S.C. §1116)
9
64.
10
11  Zing re-alleges and incorporates Paragraphs 1 through 63 above, as though fully set

12  forth herein.

13  65.

14  By virtue of the repeated and express notice by Zing to Zuru of Zing's exclusive

15  trademark rights, Zuru had actual and constructive knowledge of the trademarks registered to

16  Zing.  Zuru was informed that since at least as early as January 5, 2010, Zing first used the

17  unique "Zing" trademark and Zing claimed copyrights to the Zing Toy Products and original

18
19  art work of the "ZING AIR" logo.

20  66.

21  In complete disregard to the actual and constructive knowledge that Zuru had regarding

22  Zing's trademark rights, Zuru knowingly, intentionally and with malice continued to use Zing's

23  trademark, and Zuru did so over Zing's express objections and without Zing's consent,

24  authority, or approval.

25  ///

26

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

67.

The acts of Zuru as alleged above constitute counterfeiting Zing's federally-registered marks. By virtue of Zuru's counterfeiting, Zuru has caused and continues to cause consequential damages to Zing. These damages include, but are not limited to, the loss of business revenue and goodwill associated with Zing's mark and the original "ZING AIR" logo, all of which specifically gives rise to this action under The Trademark Counterfeiting Act of 1984, and the Anticounterfeiting Consumer Protection Act of 1996.

68.

By reason of the foregoing, Zing is entitled to any damages proven to have been caused by reason of Zuru's acts of counterfeiting, and Zing is entitled to recover enhanced, treble damages based upon the willful, intentional, and/or grossly negligent activities of Zuru. The exact amount of these claimed damages are unknown at this time, but will be proven at trial and amount no less than $500,000.

69.

Based on information and belief, Zuru has, and is likely to continue to, conceal or transfer the offending "ZING AIR" toy product materials and instrumentalities. In addition to money damages, Zing is entitled to an ex parte order to seize the subject counterfeit materials and instrumentalities in order to mitigate further damage and prevent further damage to Zing.

## **COUNT III**

### **(Federal Trademark Dilution / Cyberpiracy – 15 U.S.C. §1125)**

70.

Zing re-alleges and incorporates Paragraphs 1 through 69 above, as though fully set forth herein.

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

71.

Zuru, in a false and misleading fashion, in connection with the sale and distribution of toy goods, used in interstate commerce the word "Zing." Without the consent, approval or authorization of Zing, Zuru used the "Zing" symbol and unique packaging of "ZING AIR" in order to cause confusion, mistake, and/or to deceive the public as to Zuru's affiliation with Zing. Zuru also used the "Zing" mark and unique packaging in order to deceive the public regarding the origin, sponsorship or approval by Zing of toy goods sold and/or distributed by Zuru.

72.

In its commercial advertising, promotional printed media, and/or on its website, Zuru, with bad faith intent to profit from misuse of Zing's trademark, misrepresented the nature, characteristics, qualities, or geographic origin of Zing's toy good products, and thereby diluted the trademark "Zing."

73.

By virtue of the repeated and express notice by Zing to Zuru of Zing's exclusive trademark rights, Zuru knew or should have known that Zuru would, and in fact did, dilute the market value of Zing's trademark when Zuru continued to misappropriate trademark, unique toy packaging and toy branding on Zuru's website, in printed media and elsewhere.

74.

Zuru knew, or should have known, that it would cause irreparable damage and injury to Zing's business reputation if Zuru saturated the toy industry market by misappropriating and/or improperly using or referring to the "Zing" trademark on Zuru's website, in printed media and elsewhere.

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

75.

In complete disregard for the actual and constructive knowledge that Zuru had regarding Zing's trademark rights, Zuru knowingly, intentionally and with malice continued to dilute Zing's trademark, and caused confusion in the marketplace. Zuru did so over Zing's express objections and without Zing's consent, authority or approval.

76.

The acts of Zuru as herein alleged constitute trademark dilution and injury to Zing's business reputation. By virtue of Zuru's acts and omissions herein alleged, Zuru caused, and continues to cause, consequential damages to Zing. These damages include, but are not limited to, the loss of business revenue and goodwill associated with Zing's mark and the original "ZING AIR" logo, all of which specifically give rise to this action under The Federal Trademark Dilution Act of 1995, as codified in Section 43(c) of the Lanham Act (15 U.S.C. §1125(c)).

77.

By reason of the foregoing, Zing is entitled to any damages proven to be caused by reason of Zuru's acts of diluting Zing's trademark and thereby causing business injury to Zing. Zing is further entitled to injunctive relief as set forth in 15 U.S.C. §1116, to recover enhanced, treble damages based upon the willful, intentional, and/or grossly negligent activities of Zuru. The exact amount of these claimed damages are unknown at this time, but will be proven at trial and amount to no less than $500,000.

///

///

///

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

## COUNT IV

**(Action for Dilution under Oregon's Antidilution Statute – ORS 647.107)**

78.

Zing re-alleges and incorporates Paragraphs 1 through 77 above, as though fully set forth herein.

79.

Zuru violated ORS 647.107, which protects trade names, like the name "Zing" at issue herein.

80.

By virtue of Zuru's acts and omissions as above-described, Zuru caused a substantial likelihood of injury to the business reputation of Zing and Zuru diluted the distinctive quality of the "ZING" trademark.  Zuru's acts and omissions caused confusion in the marketplace. Customers' perception of the brand name "ZING" has been compromised and devalued because of Zuru's malicious and willful acts of continuing to copy the "ZING" logo on Zuru's packaging and continuing to list Zing toy products on Zuru's website.

81.

Based on the above, Zing is entitled to money damages and amount to be proven at trial, but not less than $500,000, plus injunctive relief to prevent Zuru from using the "ZING AIR" trade name or any variations of it.

## COUNT V

**(Unlawful Importation – 15 U.S.C. §1124)**

82.

Zing re-alleges and incorporates Paragraphs 1 through 81 above, as though fully set

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

forth herein.

83.

Based upon information and belief, Zuru has continued, and plans to continue, to import and/or misappropriate toy products that copy and simulate very closely Zing Toy Products that include the "Zing" registered trademark.

84.

Zuru's continued importation of merchandise that copies and simulates Zing's registered trademark will cause irreparable damage and injury to Zing in the form of difficult to quantify, or unascertainable, losses and damage to Zing's business reputation.

85.

In complete disregard for the actual and constructive knowledge that Zuru had regarding Zing's trademark rights, Zuru knowingly, intentionally and with malice continued to import the offending merchandise, and has caused confusion in the marketplace. Zuru did so, and continues to do so, over Zing's express objections and without Zing's consent, authority or approval.

86.

The acts of Zuru as described above constitute unlawful importation of merchandise that copies and simulates a registered trademark, and which Zuru knew or should have known would induce the public to believe that the offending toy products were manufactured by Zuru in the United States.

87.

By reason of the foregoing, Zing is entitled to any damages proven to have been caused by reason of Zuru's acts of unlawful importation of goods bearing marks that infringe upon

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

1    Zing's registered trademarks. Zing is entitled to recover enhanced, treble damages based upon

2    the willful, intentional, and/or grossly negligent activities of Zuru. The exact amount of these

3    claimed damages are unknown at this time, but will be proven at trial and amount to no less

4    than $500,000.

### COUNT VI

**(Common Law Trademark Infringement)**

88.

Zing re-alleges and incorporates Paragraphs 1 through 87 above, as though fully set

forth herein.

89.

On account of its long and continuous use of its registered trademarks on Zing Toy

Products, and substantial advertising and sales of its Zing Toy Products, Zing established

common law trademark rights in Zing's specifically-identified Toy Products.

90.

The acts by Zuru herein alleged constitutes infringement of Zing's common law rights

in and use of the "ZING" logo and branding, thereby causing Zing to incur consequential

damages and diluted to customer goodwill associated with and symbolized by the Zing Toy

Products and, specifically, give rise to this action under the common law of trademarks.

91.

Zuru's acts of trademark infringement have caused and are causing great and

irreparable harm to Zing, Zing's goodwill, Zing's rights to Zing Toy Products, in an amount

which cannot be adequately determined at this time and, unless restrained, will cause further

irreparable injury and damage, leaving Zing with no adequate remedy of law.

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

92.

On information and belief, Zuru's acts of infringement have been and are being committed after Zing sent Zuru notices and/or after Zuru had actual knowledge of Zing's prior rights in its subject Zing Toy Products. Zuru is in willful and gross disregard for Zing's rights.

93.

By reason of the foregoing, Zing is entitled to preliminary and permanent injunctive relief against Zuru, and anyone associated therewith, to restrain Zuru's further acts of infringement and, after trial, to recover any damages proven to have been caused by reason of Zuru's aforesaid acts of infringement, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Zuru.

## COUNT VII

**(Federal Unfair Competition & False Designation of Origin – 15 U.S.C. §1125(a))**

94.

Zing re-alleges and incorporates Paragraphs 1 through 93 above, as though fully set forth herein.

95.

This is a claim for false designation of origin and unfair competition arising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

96.

Zing invents, creates, licenses, manufactures, imports, advertises, and sells toy products throughout the United Sates including, but not limited to, Oregon.

97.

Prior to Zuru's conduct that forms the basis of this Complaint, and before Zuru's

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

1   continuous, willful, and unlawful actions, consumers had become familiar with the "Zing"

2   brand toys, but consumers are now confused and are associating Zuru's infringing products

3   with toy products exclusively designed, distributed and/or sold by Zing.

4                            98.

5       Through its promotional efforts, business conduct, and continuous use of Zing Toy

6   Products, Zing developed and maintained customers throughout the United States, Europe,

7   Canada, South America, and Asia.  Zing Toy Products and unique trade dress, packaging, and

8   branding have become, through widespread and favorable public acceptance and recognition,

9 

10  an asset of substantial value as a symbol for Zing, its high quality products, and its goodwill.

11                         99.

12       On account of its long and continuous use of unique trade dress, packaging and

13   branding on Zing Toy Products, and substantial advertising and sales of its products, Zing

14   established trademark rights in the following non-exhaustive list of products: ZING AIR,

15   RoomBoom, Zoomarang, Copterang, Helirang, Popshotz Blaster, Zyclone, Zyphoon,

16   Zooperball, Zeebeeze, Jumpz, HaiRazin' Hedz and Mega Jumpz, and Jumpz.

17 

18                       100.

19       Notwithstanding Zing's preexisting valid and protectable interest in Zing's unique trade

20   dress, packaging, and branding, Zuru, without permission or approval, advertised and sold the

21   "Wazooka" with Zing's trade marks, original logo artwork and branding and Zuru, unlawfully

22   and without consent, approval or agreement from Zing, distributed the "Wazooka" into the

23   market place in the United States including, but not limited to, in Oregon.

24                      101.

25 

26       As a result of Zuru's unauthorized use of Zing Toy Products, Zing's unique trade dress,

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

packaging and branding in connection with identical and related products and services, Zuru improperly copied Zing's unique packaging and trade dress.

102.

Zuru is a direct competitor of Zing. Zuru offered its products and services to customers and/or the relevant consumer base in the same geographical locations and through the same trade channels as Zing.

103.

Despite repeated demands, Zuru has failed and refused to discontinue use of Zing's specialized unique packaging, trade dress and branding on Zuru's products.

104.

Zuru's use of Zing's specialized unique packaging, trade dress and branding was and is not authorized by Zing and is likely to cause confusion and mistake, and to deceive consumers as to the source or origin of Zuru's products.

///

105.

Zing has a legitimate and discernable interest in its above-described specialized unique packaging and trade dress and branding and has been, and continues to be, injured by Zuru's unauthorized and unlawful use of Zing Toy Products and trade-dress and packaging.

106.

Zuru's unauthorized use of Zing's original artwork, trade marks and branding on toy products, including but not limited to the "Wazooka," and including references to Zing's products on Zuru's website, has caused, and is causing, confusion among potential purchasers and distributers of Zing's products.

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

107.

Zuru's above-described acts constitute an infringement of Zing's rights in and to the use of its product designs, packaging, trade dress and branding, with consequential damages to Zing and the business and goodwill associated with and symbolized by Zing Toy Products and, specifically, as those infringed rights give rise to this action under 15 U.S.C. §1125 *et seq.*

108.

Zuru's acts of unfair competition have caused and are causing great and irreparable harm to Zing, Zing's goodwill, Zing's rights to its specialized branding, trade dress and packaging, in an amount which cannot be adequately determined at this time and, unless restrained, will cause further irreparable injury and damage, leaving Zing with no adequate remedy at law.

109.

On information and belief, Zuru's acts of infringement have been and are being committed after actual notices sent by Zing to Zuru and/or with Zuru's actual knowledge of Zing's prior rights in Zing's registered trade mark and claims of copyright on the "ZING AIR" stylized logo.

110.

By reason of the foregoing, Zing is entitled to preliminary and permanent injunctive relief against Zuru, and anyone associated therewith, to restrain further acts of unfair competition and, after trial, to recover any damages proven to have been caused by reason of Zuru's aforesaid acts of unfair competition, and to recover enhanced damages based upon the willful, intentional, and/or grossly negligent activities of Zuru.

///

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

## COUNT VIII

### (Unfair Competition – State Law Claim)

111.

Plaintiff re-alleges and incorporates Paragraphs 1 through 110 above, as though fully set forth herein.

112.

Zuru's above-alleged actions were designed not only to give Zuru the highest opportunity to maximize its market share by misappropriating Zing's registered trademark and committing cyberpiracy, but also Zuru continued to improperly list and refer on its website to the "ZING AIR" products in order to create the greatest likelihood of pushing Zing out of the United States toy market by usurping sales through some or all of the key wholesale and retail distributors with whom Zing and Zuru previously competed.

113.

Zuru engaged in unfair competition in one or more of the following ways:

    (a)    By engaging in unfair pricing to sell Zing Toy Products below cost to force Zing out of the market with distributors;

    (b)    By using Zing original artwork and toy packaging on Zuru toy products; and

    (c)    By using Zing's unique toy branding and packaging in such a way to confuse the public regarding the origin, design and sale of the Zing Toy Products.

114.

As a result of Zuru's above-described acts and omissions, Zing has suffered and will

Page 33 – COMPLAINT

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

likely continue to suffer considerable damages, including the dilution of the Zing trademark,
unique toy branding, packaging and original art work, in an amount to be proven at trial, but no
less than $500,000.  In the event that Zuru is found to be continuing its acts of improperly
misleading the public by listing "Zing" products on Zuru's website and in toy packages sold
worldwide, Zing reserves its rights to seek additional damages.

115.

In addition to the above, Zing is entitled to injunctive relief in order to prevent the
diminution of the "Zing" trade name as an advertising tool among consumers and distributors
of Zing Toy Products.

## COUNT IX

### (Misuse of Trade Dress – ORS 646 *et. seq.* and ORS 647.107)

116.

Zing re-alleges and incorporates Paragraphs 1 through 115 above, as though fully set
forth herein.

/ / /

117.

At all times relevant to this action, Zing used uniquely-designed, original artwork and
the "ZING AIR" logo to market the Zing toy products.  The Zing toy products carry with them
a distinctive image and trade dress that was, and is, unique to Zing.

118.

Zing's original trade dress includes, but is not limited to, Pantone-colored toy products
and lettering that prominently features Zing's original use of Green and Blue color combination
with distinctive shape, color, graphics and combination of said elements.  These elements were

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

1    exclusively designed by Zing and its creators to specifically distinguish the Zing toy products,

2    and they therefore deserve protection against unauthorized use by Zuru or others.

3                                                119.

4        Pursuant to ORS 646 and ORS 647, Zing's aabove-described unique trade dress is a

5    protectable interest that belongs exclusively to Zing as the beneficial and/or exclusive owner.

6                                                120.

7        Without the consent, approval or agreement from Zing, Zuru caused confusion in the

8
     marketplace by misappropriating and/or otherwise using or copying Zing's unique trade dress,
9
     including, but not limited to, Zing's unique combination of shape, color and graphics to market
10
11   its toy products.  Zuru has caused confusion in the marketplace by copying, in similar

12   appearance, color, and size, the "ZING" toy brand packaging.  By doing so, Zuru engaged in an

13   unlawful practice by employing, in bad faith, unconscionable sales tactics to sell and/or

14   distribute toy products in a manner that Zuru knew or should have known was harmful to Zing.

15   / / /

16
                                              121.
17
18       Zing incurred damages by reason of Zuru's misuse of Zing's trade dress and unlawful

19   trade practices, which Zuru improperly employed to deceitfully market, sell and/or distribute

20   Zuru's competing toy products.  Zing has suffered damages, for which Zuru, pursuant to ORS

21   646 *et. seq.* and ORS 647 *et. seq.*, is liable to pay in an amount to be proven at trial, but not less

22   than $500,000.

23   ///

24   ///

25   ///

26

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

## COUNT X

### (Unjust Enrichment)

122.

Zing re-alleges and incorporates Paragraphs 1 through 121 above, as though fully set forth herein.

123.

By knowingly and wrongfully manufacturing, distributing, marketing, and/or selling Zing Toy Products with an improper motive of forcing Zing out of the toy industry business for one or more toy products without paying the agreed-upon royalties to Zing, Zuru knowingly and improperly usurped business opportunities that personally belong to Zing.

124.

Zuru likewise hindered Zing's economic business opportunities to exclusively market, sell and distribute Zing Toy Products worldwide. Zuru weakened Zing's brand name and Zing's ability to market its toy products. Zuru wrongfully precluded Zing from otherwise distributing the Zing Toy Products (including the "Wazooka") to sellers and distributors. By doing so, Zuru absorbed that business profit and unjustly received the benefit that Zing conferred upon Zuru.

125.

Zuru charged Zing for the purchase and sale of the Molds and Zyclone Tooling, but refused to relinquish control of or to return, the Molds and tooling. Instead, Zuru improperly and unlawfully used, and continues to use, the Molds and tooling and Zuru thereby unjustly received, and continues to receive, the benefit that Zing conferred upon Zuru.

///

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

126.

To prevent Zuru's unfair retention of the above-described benefit, which would otherwise unjustly enrich Zuru because of its improper motives, Zing is entitled to be reimbursed in an amount of damages to be proven at trial, but not less than $500,000.

**COUNT XI**

**(Violation of Oregon Trade Secrets Act – ORS 646.461, *et. seq.*)**

127.

Zing re-alleges and incorporates Paragraphs 1 through 126 above, as though fully set forth herein.

128.

Zing's original "ZING AIR" artwork is an exclusive and proprietary trade secret, as that term is defined by ORS 646.461, *et. seq.* Within the scope of its nonexclusive distribution agreement, Zing disclosed to Zuru its original art work and packaging for "ZING AIR." Zing's original art work and packaging for "ZING AIR" derived independent economic value based on the creative originality used only by Zing. Zing exclusively designed and originated its art work and packaging for its toy products with the intent to maintain Zing's exclusive use of same.

129.

Without the consent, approval or authorization of Zing, Zuru misappropriated the "ZING AIR" original art work and toy product packaging by referring to the "ZING AIR" product and listing the like products on Zuru's website and/or in printed media, and by using like packaging for Zuru to sell other toy products that resemble very closely the Zing Toy Products. Zuru did so in breach of the parties' non-exclusive distribution agreement, and in

Page 37 – COMPLAINT

direct violation of ORS 646, which constitutes an unlawful trade practices violation under Oregon laws.

130.

Zuru knew or should have known of Zing's exclusive rights in the trade secrets, which Zuru improperly used to Zing's detriment. Zuru knew or should have known that Zing derived, and took reasonable precautions to continue to derive, independent economic value from Zing's exclusive use of its original "ZING AIR" artwork and packaging. Zing has undertaken reasonable efforts to maintain the unique quality and originality thereof.

131.

As a result of Zuru's above-described acts and omissions, Zing suffered considerable damages in an amount to be proven at trial, but no less than $500,000. In the event that Zuru is found to be continuing its acts of misappropriating Zing's trade secrets by acquiring them through improper means and continuing to use them, Zing reserve its rights to seek additional damages and injunctive relief.

132.

Zuru should be enjoined from using in any way Zing's trade secrets in any manner, and Zuru should be directed to return to Zing any and all information in all forms that contain or reflect the trade secrets that belong to Zing. Zuru should be further prohibited from further listing on its website, or referring in any way in any printed media, any Zing Toy Products or original artwork.

133.

Zing is entitled to its reasonable attorney fees under ORS 646.467 in that Zuru misappropriated and continued use of Zing's trade secrets is willful and malicious.

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

## COUNT XII

**(Breach of Contract)**

134.

Zing re-alleges and incorporates Paragraphs 1 through 133 above, as though fully set forth herein.

135.

Zuru breached the Limited Distribution Agreement in one or more of the following ways:

    (a)    By failure to timely pay Zing the royalties due when owing;

    (b)    By failure to pay the correct amount of royalties due;

    (c)    By intercepting Zing's access to the Molds in order to fill Zuru's own orders for toy products that compete with Zing;

    (d)    By failure to provide Zing with accurate and timely quarterly reports to account for the quantity and costs of Zing's product manufactured, distributed and/or sold by Zuru;

    (e)    By failure to remove improper references to "ZING AIR" and other Zing Toy Products from Zuru's distributors' websites, when demanded by Zing; and

    (e)    By failure to promptly return the Molds when demanded by Zing.

136.

Zuru's above-alleged conduct caused Zing to suffer irreparable harm that can only be remedied and mitigated by immediate injunctive relief that prohibits Zuru from listing on its website or any printed media any and all references to "Zing," and to prevent Zuru from otherwise using Zing's original artwork in any way, and from continuing to transact business in

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

any way involving Zing Toy Products. In addition, Zing is entitled to recover its damages based on lost profit, damage to goodwill, and other out-of-pocket expenses and damages as the court may deem proper.

## COUNT XIII

### (Conversion)

137.

Zing re-alleges and incorporates Paragraphs 1 through 136 above, as though fully set forth herein.

138.

Without the authority or consent from Zing, and under protest by Zing, on or about June 17, 2010, Zuru wrongfully and in bad faith exerted dominion and control over the Molds and Zyclone Tooling, for which Zing paid full consideration, and which exclusively belong to Zing. By doing so, Zuru denied Zing its exclusive right and entitlement to possess and use the Molds in order to promptly manufacture Zing Toy Products including, but not limited to, time-sensitive purchase orders placed to Zing for its "Helirang," "RoomBoom," and "Zoomarang" toy products.

///

139.

Zing demanded, but Zuru refused, to return the Molds and Zyclone Tooling. By doing so, Zuru intentionally and in bad faith exercised dominion and control over the Molds and Zyclone Tooling in a manner and for a duration of time that has seriously, substantially and irreparably interfered with the right of Zing to control and use its own Molds and Zyclone Tooling. Zuru did so with bad and malicious motives, in retaliation for a factory backlog

Page 40 – COMPLAINT

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

1  caused outside of Zing's control by a workers strike at the Changhui factory. Zing, not Zuru,

2  suffered lost production time as a consequence of Zuru's improper and unauthorized exercise

3  of control over Zing's Molds and Zyclone Tooling.

4                                           140.

5          As a direct and proximate result of Zuru's conversion of the Molds and Zyclone

6  Tooling, Zing was forced to order new molds from an alternative source, and Zing did so based

7  on unavoidable expedited rates. Were it not for Zing's prompt and prudent efforts to mitigate

8  damages and secure substitute molds for production and distribution of its "Helirang,"

9  "Roomboom," and "Zoomarang" toy products on back-order, Zing would most certainly have

10  forever lost the opportunity to sell its "Helirang," "Roomboom," and "Zoomarang" toy

11  products that were previously ordered from several buyers and distributors.

12

13                                           141.

14          Because of Zuru's conversion of Zing's Molds, Zing had inadequate stock of its toy

15  products and Zing was forced to delay shipments to its retail distributors. Based on Zuru's

16  conversion of Zing's Molds, Zing suffered, and continues to suffer, lost opportunities to sell its

17  toy products, lost profits, and permanent and irreparable damage to its goodwill and reputation

18  as a reliable supplier of toy products.

19

20                                           142.

21          As a direct and proximate result of Zuru's wrongful, deliberate, bad faith conversion of

22  the Molds and Zyclone Tooling for Zuru's own personal use, Zing has been damaged in an

23  unknown amount which will be proven at trial, but which is not less than $1,000,000.

24                                        **PRAYER**

25          WHEREFORE, Zing prays for the following relief:

26

**CARR BUTTERFIELD, LLC**
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

A.     A preliminary and permanent injunction enjoining and preventing within the United States Defendant ZURU, its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries and assigns, and all those in concert or participation with any of them from:

(1)     imitating, copying, using, reproducing, registering, attempting to register and/or display any toy packaging or branding which colorably imitates or is confusingly similar to Zing Toy Products;

(2)     using any false description or representation or any other thing calculated or likely to cause confusion, deception, or mistake in the marketplace with regard to Zing Toy Products; and

(3)     importing  to the United States, or selling, manufacturing, or offering to sell any Zuru products which colorably imitate or are confusingly similar to *any* Zing Toy Products, including the "ZING AIR" line of toy products and the Zyclone;

B.     An award of damages, in an amount not less than $1,000,000 to compensate for the infringement by Zuru of Zing's Trademark and patent protected toy products, in an amount to be proven at trial, including Zing's actual damages and Zuru's profits attributable to the infringement, and for conversion, unjust enrichment, unfair competition, and breach of contract;

C.     An order directing Zuru to deliver up for destruction all materials and matter in its possession or custody or under its control that infringes Zing's trade dress and branding, including, without limitation, all advertising and promotional materials;

D.     An Order awarding Zing its attorney's fees, treble actual damages, and treble damages based upon an accounting of Zuru's profits , including all statutory enhancements,

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

other enhancements, and attorney's fees on the account of the willful nature of Zuru's acts as provided for in 15 U.S.C. §1117, 35 U.S.C. §271, and ORS 646, *et seq*;

E.    An award of treble damages pursuant to 35 U.S.C. §284 and a finding that this is an exceptional case and awarding attorney's fees pursuant to 35 U.S.C. §285;

F.    An Order for a full and complete accounting by Zuru to reconcile *all* Zing Toy Products sold, manufactured and/or distributed by Zuru;

G.    An Order compelling Zuru to immediately release control and deliver to Zing, at Zuru's own expense, the toy Molds and Zyclone Tooling for which Zing previously paid good consideration and value, including, but not limited to the molds that are still in Zuru's possession for manufacturing of the ZING AIR toy products, and specifically the "Helirang," "Zoomarang," "RoomBoom," as well as the "Zartz paddle," and the "Zyclone" foam parts, molds and Zing-owned machines used by Zuru to manufacture the "Zyclone" parts; and

H.    Such other relief, in law or in equity, to which Zing may be entitled, or which this Court deems just and proper.

DATED this _____ day of July, 2010.

Respectfully submitted,

CARR BUTTERFIELD, LLC

Lisanne M. Butterfield/ OSB No. 91368
lbutterfield@carrbutterfield.com
Telephone: 503-635-5244
Facsimile: 503-635-2955
Of Attorneys for Plaintiff

Trial Attorney: Lisanne M. Butterfield

Page 43 – COMPLAINT

CARR BUTTERFIELD, LLC
155 B Avenue, Suite 240
Lake Oswego, OR 97034
Telephone: (503) 635-5244
Fax: (503) 635-2955

Int. Cl.: 40

Prior U.S. Cls.: 100, 103 and 106

## United States Patent and Trademark Office

**Reg. No. 3,626,244**
Registered May 26, 2009

### SERVICE MARK
### PRINCIPAL REGISTER

# ZING

ZING TOYS, INC. (OREGON CORPORATION)
P.O. BOX 520
BEND, OR 97106

FOR: CUSTOM MANUFACTURER OF TOYS, IN CLASS 40 (U.S. CLS. 100, 103 AND 106).

FIRST USE 9-1-2006; IN COMMERCE 9-1-2006.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-571,725, FILED 9-17-2008.

MARIA-VICTORIA SUAREZ, EXAMINING ATTORNEY

EXHIBIT A
PAGE 1 OF 1

Int. Cls.: 9 and 28

Prior U.S. Cls.: 21, 22, 23, 26, 36, 38, and 50

## United States Patent and Trademark Office

Reg. No. 3,469,484

Registered July 15, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# Zing!

THINK LINK, INC. (NEW YORK CORPORA-
TION), DBA TLI GAMES,
1735 YORK AVENUE, SUITE 34C
NEW YORK, NY 10128

FOR: COMPUTER GAME PROGRAMS; ELEC-
TRONIC GAME PROGRAMS; ELECTRONIC GAME
SOFTWARE FOR CELLULAR TELEPHONES; ELEC-
TRONIC GAME SOFTWARE FOR HANDHELD
ELECTRONIC DEVICES; ELECTRONIC GAME
SOFTWARE FOR WIRELESS DEVICES; INTERAC-
TIVE MULTIMEDIA COMPUTER GAME PRO-
GRAM, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 1-1-2006; IN COMMERCE 9-1-2006.

FOR: BOARD GAMES; HAND HELD UNIT FOR
PLAYING ELECTRONIC GAMES; PARLOR
GAMES; PARTY GAMES, IN CLASS 28 (U.S. CLS.
22, 23, 38 AND 50).

FIRST USE 1-1-2006; IN COMMERCE 9-1-2006.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SN 78-781,297, FILED 12-27-2005.

SANJEEV VOHRA, EXAMINING ATTORNEY

EXHIBIT B
PAGE 1 OF 5

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2010-07-22 20:29:56 ET

**Serial Number:** 78781297 <u>Assignment Information</u>          <u>Trademark Document Retrieval</u>

**Registration Number:** 3469484

**Mark**

# Zing!

**(words only):** ZING!

**Standard Character claim:** Yes

**Current Status:** The Trademark Trial and Appeal Board has terminated a cancellation proceeding.

**Date of Status:** 2010-05-19

**Filing Date:** 2005-12-27

**Filed as TEAS Plus Application:** Yes

**Currently TEAS Plus Application:** Yes

**Transformed into a National Application:** No

**Registration Date:** 2008-07-15

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 110

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2008-06-12

EXHIBIT B
PAGE 2 OF 5

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. ZING TOYS, INC.

**Address:**
ZING TOYS, INC.
P.O. BOX 520
BANKS, OR 97106
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Oregon

---

## GOODS AND/OR SERVICES

**International Class:** 009
**Class Status:** Active
Computer game programs; Electronic game programs; Electronic game software for cellular telephones; Electronic game software for handheld electronic devices; Electronic game software for wireless devices; Interactive multimedia computer game program
**Basis:** 1(a)
**First Use Date:** 2006-01-01
**First Use in Commerce Date:** 2006-09-01

**International Class:** 028
**Class Status:** Active
Board games; Hand held unit for playing electronic games; Parlor games; Party games
**Basis:** 1(a)
**First Use Date:** 2006-01-01
**First Use in Commerce Date:** 2006-09-01

---

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2010-05-19 - TTAB Release Case To Trademarks

2010-05-19 - Cancellation terminated for Proceeding

2010-05-19 - Cancellation dismissed for Proceeding

EXHIBIT B
PAGE 3 OF 5

2010-03-24 - Automatic Update Of Assignment Of Ownership

2010-03-11 - Cancellation terminated for Proceeding

2010-03-11 - Cancellation dismissed for Proceeding

2010-03-03 - Cancellation granted for Proceeding

2009-02-02 - Cancellation Instituted No. 999999

2009-01-26 - Notice Of Suit

2008-09-09 - Cancellation Instituted No. 999999

2008-07-15 - Registered - Principal Register

2008-06-12 - Law Office Registration Review Completed

2008-06-06 - Allowed for Registration - Principal Register (SOU accepted)

2008-05-15 - Statement Of Use Processing Complete

2008-05-02 - Use Amendment Filed

2008-05-02 - TEAS Statement of Use Received

2008-02-26 - Noa Mailed - SOU Required From Applicant

2007-12-04 - Published for opposition

2007-11-14 - Notice of publication

2007-10-31 - Law Office Publication Review Completed

2007-10-30 - Approved For Pub - Principal Register

2007-09-21 - Teas/Email Correspondence Entered

2007-09-21 - Communication received from applicant

2007-09-21 - TEAS Request For Reconsideration Received

2007-09-21 - Ex parte appeal - Instituted

2007-09-21 - Jurisdiction Restored To Examining Attorney

2007-09-21 - EXPARTE APPEAL RECEIVED AT TTAB

2007-03-21 - Final refusal e-mailed

EXHIBIT β
PAGE 4 OF 5

2007-03-21 - Final Refusal Written

2007-01-23 - Teas/Email Correspondence Entered

2007-01-23 - Communication received from applicant

2007-01-23 - Assigned To LIE

2006-12-22 - TEAS Response to Office Action Received

2006-12-21 - TEAS Response to Office Action Received

2006-06-24 - Non-final action e-mailed

2006-06-24 - Non-Final Action Written

2006-06-21 - Assigned To Examiner

2006-01-05 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Correspondent**
THINK LINK, INC. DBA TLI GAMES
1735 YORK AVENUE SUITE 34C
NEW YORK, NY 10128

EXHIBIT B
PAGE 5 OF 5

# Payments

**Your transaction has been successfully processed.**

| | |
|---|---|
| **Transaction Reference Number** | NA0200020995 |
| **Pay From** | 809-253214-838 Business Integrated Account USD Savings |
| **Payment Amount** | USD 29,845.11 |
| **Pay On** | 02/10/2009 |
| **Reference** | ZURU ZYCLON |
| **Beneficiary Bank Name** | HSBC Hong Kong |
| **Beneficiary Account Number** | 400-331054-838 |
| **Beneficiary Account Currency** | USD |
| **My Notes** | ZURU INV ZT091031 ZM09084 ZM09087 |

Privacy and Security |  Terms of Use |  Hyperlink Policy |  Sitemap |  Online Security

© The Hongkong and Shanghai Banking Corporation Limited 2002-2009. All rights reserved.

EXHIBIT C
PAGE 1 OF 4

**From:** cathy [mailto:cathy@zuru.com]
**Sent:** Thursday, December 10, 2009 7:41 PM
**To:** 'Brian Bishop'; Steve@Zingtoys.com; Pete@Zingtoys.com
**Cc:** 'Cindy Baker - Zing Toys, Inc.'; anna@zuru.com
**Subject:** 答复: mold and machine balance

Hi Brian,

Thank you for your email, I checked back the July account and confirm USD39535.61 is for following Debit note not just for ZM09045/58, and I attached all the debit note here for your reference.

ZM09036  USD13210.00
ZM09039  USD1048.24
ZM09045  USD9429.04
ZM09046  USD10831.03
ZM09054  USD646.00
ZM09058  USD4136.89
Total:      USD39301.20

And compare with your payment USD39535.61, seems there's USD234.41 difference. I need to spent more time to check back and see why there's USD234.41 difference, but I believe there should be no overpayment. Please check the above for your reference, if any questions, please inform. Thanks~

Have a good weekend!


**Cathy**
**Team ZURU**
Ph   : +86 20 8687 3002
Fax  : +86 20 8687 3066

发送人: Brian Bishop [mailto:brian@zingtoys.com]
发送时间: 2009年12月10日 9:11
收件人: cathy@zuru.com
抄送: 'Cindy Baker - Zing Toys, Inc.'
主题: mold and machine balance

Hi Cathy :

**EXHIBIT C**
**PAGE 2 OF 4**

I am responding to the email you recently sent to Cindy where you could not understand why Zuru owes Zing 16,264.40.

Here is our summary :

Mold & Machine activity listing for 2009

| Invoice | Amount | Amount Paid | Date Paid |
|---------|--------|-------------|-----------|
| ZM09013 | 17471.99 | | |
| ZM09025 | 7755.62 | | |
| ZM09014 | 147.06 | | |
| | 25,374.67 | 25,374.67 | 8-May-09 |
| ~~██████~~ | ~~██████~~ | | |
| ZM09045 | 9429.04 | | |
| ZM09058 | 4136.85 | | |
| | 21,133.14 | 39,535.61 | 14-Jul-09 |
| ZM09084 | 1,608.11 | 1,608.11 | 2-Oct-09 |
| ZM09101 | 15,313.70 | 15,313.70 | 23-Nov-09 |
| Total | 63,429.62 | 81,832.09 | |
| Difference | (18,402.47) | | |

We believe that we overpaid you on 14-July-2009. I now have seen that you also charged for a payment of Invoice ZM09046 (amount is 10,831.03). We do not have this invoice – can you please send me a copy? If this is an invoice that should be charged to Zing, then the overpayment will be reduced from -18402.47 to -7571.44. Can you check to see if you agree with my schedule?

Thank you,
Brian

EXHIBIT C
PAGE 3 OF 4

7/20/2010

# ZURU INC.

**ADD.: BLDG NO# 136, XINDU RAOD, XINHUA INDUSTRIAL AREA, HUADU, GUANGZHOU, CHINA**
Tel:86-20-86873020/ 86873005    Fax:86-20-86873066
E-mail: anna@zuru.com/cathy@zuru.com/coco@zuru.com

## DEBIT NOTE

MESSRS. :   **ZING TOYS**
**P.O Box 520**
**Banks Oregon 97106 USA**

DATE: 2009-05-31
NUM: ZM09045
REF:

| Date | Mold # | Mold Name | AMOUNT (RMB) | AMOUNT (USD) |
|---|---|---|---|---|
| ~~2009-05-07~~ | ~~RMG-05M~~ | ~~CHOPPERANG MOLD~~ | ~~¥5,2012~~ | ~~$5,0.x.s~~ |
| 2009-04-29 | RMG-M03 | ROOMARANG EVA MOLD | ¥5,923.84 | $871.15 |
| 2009-04-29 | RMG-M04 | ROOMARANG EVA MOLD | ¥6,215.04 | $913.98 |
| 2009-05-08 | RMG-05M | ROOMARANG EVA MOLD | ¥5,578.24 | $820.33 |
| 2009-05-07 | RMG-06M | ROOMARANG EVA MOLD | ¥6,666.24 | $980.33 |
| 2009-04-03 | RMG-08M | ROOMARANG TEST MOLD | ¥1,020.80 | $150.12 |
| 2009-05-27 | RMG-07M | ROOMARANG EVA MOLD | ¥5,942.24 | $873.86 |
| 2009-05-27 | RMG-09M | ROOMARANG EVA MOLD | ¥5,942.24 | $873.86 |
| 2009-05-25 | RMBM-01M; RMBM-02M; ZMAG-01M; ZMAG-02M; HELG-01M; HELG-02M; HELG-03M; BGFH-01M; BGFH-02M; BGFH-03M; BGFH-04M | Add water run: roomboom EVA body; roomboom EVA logo; Zoomarang EVA body; Zoomarang EVA logo; Helirang bottom; Helirang body; Helirang logo; ball gun bottomfoam handle; ball gun handle; ball gun-logo; New ball gunhandle cold pressing mold | ¥4,400.00 | $647.08 |
| 2009-05-27 | CHOP-01M | Chopperang logo mold | ¥8,179.68 | $1,202.89 |
| | | **TOTAL** | ¥64,117.44 | $9,429.04 |

SAY TOTAL USD NINE THOUSAND FOUR HUNDRED AND TWENTY NINE DOLLARS FOUR CENTS ONLY,

PAYMENT TERM TT

BANK DETAILS:

ZURU INC.

HSBC Hong Kong Des Voeux Road Central Branch

A/C NO.: 400 331054 838

SWIFT: HSBCHKHHHKH



SIGNED _____

DATE _____

EXHIBIT C
PAGE 4 OF 4

**From:** cathy [mailto:cathy@zuru.com]
**Sent:** Thursday, December 10, 2009 7:41 PM
**To:** 'Brian Bishop'; Steve@Zingtoys.com; Pete@Zingtoys.com
**Cc:** 'Cindy Baker - Zing Toys, Inc.'; anna@zuru.com
**Subject:** 答复: mold and machine balance

Hi Brian,

Thank you for your email, I checked back the July account and confirm USD39535.61 is for following Debit note not just for ZM09045/58, and I attached all the debit note here for your reference.

```
ZM09036  USD13210.00
ZM09039  USD1048.24
ZM09045  USD9429.04
ZM09046  USD10830.03
ZM09054  USD646.00
ZM09058  USD4136.89
Total:     USD39301.20
```

And compare with your payment USD39535.61, seems there's USD234.41 difference. I need to spent more time to check back and see why there's USD234.41 difference, but I believe there should be no overpayment. Please check the above for your reference, if any questions, please inform. Thanks~

Have a good weekend!

**Cathy**
**Team ZURU**
Ph   : +86 20 8687 3002
Fax : +86 20 8687 3066

发件人: Brian Bishop [mailto:brian@zingtoys.com]
发送时间: 2009年12月10日 9:11
收件人: cathy@zuru.com
抄送: 'Cindy Baker - Zing Toys, Inc.'
主题: mold and machine balance

Hi Cathy :

**EXHIBIT D**
**PAGE _1_ OF _7_**

I am responding to the email you recently sent to Cindy where you could not understand why Zuru owes Zing 16,264.40.

Here is our summary :

Mold & Machine activity listing for 2009

| Invoice | Amount | Amount Paid | Date Paid |
|---------|--------|-------------|-----------|
| ZM09013 | 17471.99 | | |
| ZM09025 | 7755.62 | | |
| ZM09014 | 147.06 | | |
| | 25,374.67 | 25,374.67 | 8-May-09 |
| Zyclone Molds | 7567.25 | | |
| ZM09045 | 9429.04 | | |
| ZM09058 | 4136.85 | | |
| | 21,133.14 | 39,535.61 | 14-Jul-09 |
| ZM09084 | 1,608.11 | 1,608.11 | 2-Oct-09 |
| ZM09101 | 15,313.70 | 15,313.70 | 23-Nov-09 |
| Total | 63,429.62 | 81,832.09 | |

Difference   (18,402.47)

We believe that we overpaid you on 14-July-2009.  I now have seen that you also charged for a payment of Invoice ZM09046 (amount is 10,831.03).  We do not have this invoice – can you please send me a copy? If this is an invoice that should be charged to Zing, then the overpayment will be reduced from -18402.47 to -7571.44.  Can you check to see if you agree with my schedule?

Thank you,
Brian

EXHIBIT D
PAGE 2 OF 7

# ZURU INC

ROOM 1210-1211 12/F, BLOCK A, NEW MANDARIN PLAZA, 14 SCIENCE MUSEUM RD, TST EAST, KOWLOON HONG KONG

Tel:86-20-86873020/ 86873021   Fax:86-20-86873066

E-mail: Jovlan@zuru.com

## DEBIT NOTE

MESSRS.                                                                        06-11-2009

                                                                               ZM09054

| DESCRIPTION | AMOUNT |
|---|---|
| SAMPLE FREIGHT CHARGE DHL and UPS  from 2009 January to April  total $292 /2 =$146<br>JUMPZ SAMPLE CHARGE 0.50/PC , 1000PCS  total $500 | USD646.00 |

SAY TOTAL SIX HUNDRED AND FOURTY-SIX DOLLARS ONLY.

BANK DETAILS:

ZURU INC

HSBC Hong Kong Des Voeux Road Central Branch

A/C NO.: 400 331054 838



SIGNED _____

EXHIBIT D

PAGE 3 OF 7

## ZURU INC.

ADD.: BLDG NO# 136, XINDU RAOD, XINHUA INDUSTRIAL AREA, HUADU, GUANGZHOU, CHINA

Tel:86-20-86873020/ 86873005    Fax:86-20-86873066

E-mail: anna@zuru.com/cathy@zuru.com/coco@zuru.com

## DEBIT NOTE

MESSRS. :   **ZING TOYS**                                           DATE: 2009-07-06

**P.O Box 520**                                        NUM: ZM09058

**Banks Oregon 97106 USA**                      REF:

| Date | Mold # | Mold Name | AMOUNT (RMB) | AMOUNT (USD) |
|------|--------|-----------|--------------|--------------|
| 2009-05-07 | RMG-10M | ROMMARANG EVC MOLD | ¥5,961.44 | $876.68 |
| 2009-05-31 | CHOP-02M | CHOPPERANG BODY MOLD | ¥13,570.24 | $1,995.62 |
| 2009-05-31 | FLRO-01M | FLYRO GYRO TEST MOLD | ¥5,359.04 | $788.09 |
| 2009-06-05 | RMJR-01M | ROOMARANG JR TEST MOLD | ¥3,240.16 | $476.49 |
| | | TOTAL | ¥28,130.88 | $4,136.89 |

SAY TOTAL USD FOUR THOUSAND ONE HUNDRED AND THIRTY SIX DOLLARS EIGHT NINE CENTS ONLY.

PAYMENT TERM TT

BANK DETAILS:

ZURU INC.

HSBC Hong Kong Des Voeux Road Central Branch

A/C NO.: 400 331054 838

SWIFT: HSBCHKHHHKH



SIGNED _____

DATE _____

EXHIBIT D

PAGE 4 OF 7

**ZURU INC**

ROOM 1210-1211 12/F, BLOCK A, NEW MANDARIN PLAZA, 14 SCIENCE MUSEUM RD, TST EAST, KOWLOON HONG KONG
Tel:86-20-86873002/ 86873021    Fax:86-20-86873066
E-mail: cathy@zuru.com

**DEBIT NOTE**

MESSRS.: ZING TOYS                              Date: May 21, 2009
        P. O. Box 520 Banks Oregon 97106 USA    NUM.: ZM09039

| DESCRIPTION | AMOUNT (RMB) | AMOUNT (USD) |
|---|---|---|
| MEGA JUMPZ SGS testing cost : 50%*RMB14256.50 | ¥7,128.25 | US$1,048.27 |
| TOTAL: | ¥7,128.25 | US$1,048.27 |

<u>SAY TOTAL US ONE THOUSAND AND FORTY EIGHT DOLLARS AND TWENTY SEVEN CENTS ONLY.</u>

Remark:

The debit note is base on the invoice from SGS sent on May 20, 2009, ZING & ZURU share 50/50 the testing cost.

BANK DETAILS:

ZURU INC

HSBC Hong Kong Des Voeux Road Central Branch

A/C NO.: 400 331054 838

SWIFT: HSBCHKHHHKH                    SIGNED_____

                                      DATE _____



# ZURU INC.

ADD.: BLDG NO# 136, XINDU RAOD, XINHUA INDUSTRIAL AREA, HUADU, GUANGZHOU, CHINA

Tel:86-20-86873020/ 86873005    Fax:86-20-86873066

E-mail: anna@zuru.com/cathy@zuru.com/coco@zuru.com

## DEBIT NOTE

MESSRS. :     **ZING TOYS**

P.O Box 520

Banks Oregon 97106 USA

DATE: 2009-05-31

NUM: ZM09045

REF:

| Date | Mold # | Mold Name | AMOUNT (RMB) | AMOUNT (USD) |
|---|---|---|---|---|
| 2009-05-07 | ZART-05M | ZARTZ PP PADDLE MOLD | ¥14,249.12 | $2,095.46 |
| 2009-04-29 | RMG-M03 | ROOMARANG EVA MOLD | ¥5,923.84 | $871.15 |
| 2009-04-29 | RMG-M04 | ROOMARANG EVA MOLD | ¥6,215.04 | $913.98 |
| 2009-05-08 | RMG-05M | ROOMARANG EVA MOLD | ¥5,578.24 | $820.33 |
| 2009-05-07 | RMG-06M | ROOMARANG EVA MOLD | ¥6,666.24 | $980.33 |
| 2009-04-03 | RMG-08M | ROOMARANG TEST MOLD | ¥1,020.80 | $150.12 |
| 2009-05-27 | RMG-07M | ROOMARANG EVA MOLD | ¥5,942.24 | $873.86 |
| 2009-05-27 | RMG-09M | ROOMARANG EVA MOLD | ¥5,942.24 | $873.86 |
| 2009-05-25 | RMBM-01M; RMBM-02M; ZMAG-01M; ZMAG-02M; HELG-01M; HELG-02M; HELG-03M; BGFH-01M; BGFH-02M; BGFH-03M; BGFH-04M | Add water run: roomboom EVA body; roomboom EVA logo; Zoomarang EVA body; Zoomarang EVA logo; Helirang bottom Helirang body; Helirang logo; ball gun bottomfoam handle; ball gun handle; ball gun-logo; New ball gunhandle cold pressing mold | ¥4,400.00 | $647.06 |
| 2009-05-27 | CHOP-01M | Chopperang logo mold | ¥8,179.68 | $1,202.89 |
| | | TOTAL | ¥64,117.44 | $9,429.04 |

SAY TOTAL USD NINE THOUSAND FOUR HUNDRED AND TWENTY NINE DOLLARS FOUR CENTS ONLY.

PAYMENT TERM TT

BANK DETAILS:

ZURU INC.

HSBC Hong Kong Des Voeux Road Central Branch

A/C NO.: 400 331054 838

SWIFT: HSBCHKHHHKH



SIGNED _____

DATE _____

**EXHIBIT D**

**PAGE 6 OF 7**

## ZURU INC

ROOM 1210-1211 12/F, BLOCK A, NEW MANDARIN PLAZA, 14 SCIENCE MUSEUM RD, TST EAST, KOWLOON HONG KONG
Tel:86-20-86873002/ 86873021   Fax:86-20-86873066
E-mail: cathy@zuru.com

## DEBIT NOTE

MESSRS.: ZING TOYS                                          Date: May 21, 2009
    P. O. Box 820 Banks Oregon 97106 USA                   NUM.: ZM09036

| DESCRIPTION | | AMOUNT (USD) |
|---|---|---|
| Zarts TV Commercial cost (50%*USD26420.00) | | US$13,210.00 |
| | TOTAL | US$13,210.00 |

SAY TOTAL US THIRTEEN THOUSAND TWO HUNDRED AND TEN DOLLARS ONLY.

Remark:

The debit note is base on the Invoice CO IMAGEN S.A.C sent on Dec.09, 2008, ZING & ZURU share 50/50 the TV commercial cost.

BANK DETAILS:

ZURU INC

HSBC Hong Kong Des Voeux Road Central Branch

A/C NO.: 400 331054 838

SWIFT: HSBCHKHHHKH                          SIGNED _____

                                           DATE _____



EXHIBIT D
PAGE 7 OF 7



EXHIBIT E
PAGE 1 OF 2



EXHIBIT E
PAGE 2 OF 2

US006742509B2

(12) **United States Patent** (10) Patent No.: **US 6,742,509 B2**

Hunter et al. (45) Date of Patent: *Jun. 1, 2004

(54) **RING AIRFOIL LAUNCHING SYSTEM**

(76) Inventors: **John W. Hunter**, 15628 Bernardo
Center Dr., #2606, San Diego, CA (US)
92127; **Robert M. Fryer**, 726 Seabright
La., Solana Beach, CA (US) 92075;
**Philip J. Sluder**, 4817 Palm Ave., Suite
K, La Mesa, CA (US) 91941-3840;
**Robert A. Rauch**, 13526 Aldrin Ave.,
Poway, CA (US) 92064

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 0 days.

This patent is subject to a terminal dis-
claimer.

(21) Appl. No.: **10/175,730**

(22) Filed: **Jun. 20, 2002**

(65) **Prior Publication Data**

US 2003/0234013 A1 Dec. 25, 2003

(51) Int. Cl.$^7$ ............................... F41B 7/00; F41F 7/00
(52) U.S. Cl. .......................... 124/17; 124/20.1; 446/39;
446/64
(58) Field of Search ............................. 446/39, 45, 63,
446/64, 65; 124/10, 17, 20.1, 41.1, 79

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,949,731 A * 4/1976 Caso ........................... 124/27

| | | | | |
|---|---|---|---|---|
| 4,050,438 A | * | 9/1977 | Pfotenhauer | 124/20.1 |
| 4,154,012 A | * | 5/1979 | Miller | 42/105 |
| 4,169,453 A | * | 10/1979 | Hunsicker | 124/20.1 |
| 4,291,663 A | * | 9/1981 | Buck et al. | 124/26 |
| 4,335,701 A | * | 6/1982 | Bozich | 124/26 |
| 5,125,388 A | * | 6/1992 | Nicely et al. | 124/20.1 |
| 5,970,970 A | * | 10/1999 | Vanek et al. | 124/16 |
| 6,079,398 A | * | 6/2000 | Grimm | 124/16 |
| 6,599,161 B2 | * | 7/2003 | Hunter | 446/39 |

* cited by examiner

Primary Examiner—Derris H. Banks
Assistant Examiner—Ali F Abdelwahed
(74) *Attorney, Agent, or Firm*—Fehr Law Firm; Thompson
E. Fehr

(57) **ABSTRACT**

An airfoil launching system having a rod with a structure
attached to a first end of the rod. A pusher holds a ring airfoil
and has a sufficient coefficient of friction that the ring airfoil
will generally rotate with the pusher and is rotatably and
slidably mounted on the rod. Propulsive force is provided by
resilient bands connected to the structure outward from the
rod and to the pusher outward from the central aperture of
the pusher. A grip attached to the pusher is utilized to draw
the pusher toward the second end of the rod, thereby
stretching and energizing the resilient bands, and also to
rotate the pusher and, consequently, the airfoil.

**17 Claims, 6 Drawing Sheets**



EXHIBIT F
PAGE 1 OF 10



Figure 1

EXHIBIT F
PAGE 2 OF 10



Figure 2

EXHIBIT F
PAGE 3 OF 10



Figure 3

EXHIBIT  _F_
PAGE _4_ OF _10_



Figure 4

EXHIBIT F
PAGE 5 OF 10



Figure 5

EXHIBIT F
PAGE 6 OF 10



Figure 6

EXHIBIT F
PAGE 7 OF 10

US 6,742,509 B2

1

## RING AIRFOIL LAUNCHING SYSTEM

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to a launcher for a ring airfoil projectile.

2. Description of the Related Art

There are a number of devices for launching projectiles.

U.S. Pat. No. 4,154,012 employs a rod within a barrel to facilitate the launching of a grenade.

U.S. Pat. No. 4,291,663 has a rod containing a helical groove for launching a ball that spins as it moves longitudinally. Lines 63 through 65 in column 3 declare, ". . . the rod 18 is a hollow cylinder with a long, thin aperture 51 describing a portion of a helical path about its exterior." Furthermore, lines 9 through 14 in column 3 explain, ". . . the trigger operating device 22 presses against the trigger (not shown in FIG. 1) of the launcher 24. This releases the launcher 24 which is spring driven to impel the ball 28 along the length of the rod [member] 18 and cause it to be thrown in a line in the direction of the axis of the rod 18." And lines 31 through 35 in column 4 indicate, "It should be noted that in the preferred embodiment the launcher 24 travels a helical path described by the aperture 51 so that a spin is imparted to the ball."

U.S. Pat. Nos. 5,970,970 and 6,079,398 both cover a launching rod having a fixed helical groove or aperture to launch a ring airfoil with a spin having been imparted to the airfoil through interaction of the launch platform with the groove.

The disclosure of U.S. Pat. No. 5,970,970 also explains, "Propelling element 62 is associated with ring airfoil support 60 and is configured to move the ring airfoil support along member 58. Such movement may involve acceleration and deceleration. Propelling element 62 is best seen in FIG. 8. In launcher 20, propelling element 62 takes the form of a spring having two ends, where one end is attached to a knob 82 inside the forward end of member 58 and the other end is attached to pin 78 as it passes through member 58."

U.S. Pat. No. 5,970,970 further clarifies, "Trigger 28 . . . holds ring airfoil support 60 in the first, cocked position, in which energy is stored in the launcher, and releases ring airfoil support 60 upon actuation of the trigger to permit the ring airfoil support to move along member 58 to the second, fired position, in which energy is transferred to the ring airfoil."

Finally, the disclosure in U.S Pat. No. 5,970,970 says, "Member 58 also may have a channel 68 disposed along at least a portion of its length. This channel may take a number of forms. In launcher 20, channel 68 takes the form of two helical slots disposed on opposite sides of member 58 and making about one-quarter turn along the length of the member." It does not appear that any other embodiment is described in U.S. Pat. No. 5,970,970 for causing the airfoil to rotate.

And U.S. Pat. No. 6,079,398 provides, "further secured over forward end 140 is a launch spring 148 (illustrated as a cylinder and preferably a metal coil spring) and a launch chuck 150. Chuck 150 includes a sleeve portion 152 having an inner diameter 154 in which a pair of tabs (not shown) are formed. The tabs engage slots 138. Slots 138 form a helical twist which causes a rotation of chuck 150 as it moves axially along shaft 100. Launch spring 148 bears between collar 142 and chuck 150, and chuck 150 is retained on

2

forward end 140 by a bumper 156 and a retainer 158 that is secured to forward end 140. Chuck 150 is formed with a plurality of radially outwardly extending arms 160, that are adapted to engage inner surface 46 of a ring airfoil 34, and outwardly extending tabs 162 adapted to engage trailing edge 45 of ring airfoil 34.

None of the preceding patents provide for altering the degree of spin.

In application Ser. No. 10/000,274 of John W. Hunter, Ph.D., though, the rotation of the airfoil is adjustable and is accomplished with two or more resilient bands. The degree of axial rotation is determined by the amount which a spin guide is rotated about the longitudinal axis of the launch guide. The two resilient bands are angularly rotated by the spin guide to the same extent as is the spin guide.

### SUMMARY OF THE INVENTION

Surprisingly, however, the present inventors have discovered that adjustable rotation of the airfoil can be successfully accomplished without any channel or spin guide. For this purpose, a grip is simply attached to the pusher.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 depicts the airfoil launching system of the present invention.

FIG. 2 is a lateral view of a pusher.

FIG. 3 is a plan view from the front of a pusher.

FIG. 4 is a plan view from the front of a pusher having a non-continuous flange.

FIG. 5 shows an alternate embodiment of a rod handle.

FIG. 6 illustrates a cross section of a ring airfoil.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

The present airfoil launching system has a rod 1 termed a "launch guide."

Attached toward a first end 2 of the rod 1 is a support 3 that extends radially outward from the rod 1.

Connected to a first side 4 of the support 3 outward from the rod 1 and preferably, but not necessarily, near a first end 5 of the support 3 is a first end 6 of a first set 7 of resilient bands 8, which set 7 comprises one or more resilient bands 8. Similarly, attached to a second side 9 of the support 3 outward from the rod 1 and preferably, but not necessarily, near a second end 10 of the support 3 is a first end 11 of a second set 12 of resilient bands 8, which set 12 comprises one or more resilient bands 8. Preferably, there is a single resilient band 8 in each set 7 and 12 which is preferably latex tubing which can be obtained either from Elastomer Products, Inc. of Kent, Ohio, or from Primeline Industries of Del Rio, Tex.

A pusher 13 is a generally disc-shaped structure 14 which contains a central aperture 15; has an outer diameter 16; and preferably, but not necessarily, contains one or more apertures 17 between the central aperture 15 and the outer diameter 16 in order to reduce the air resistance and the weight of the pusher 13.

The central aperture 15 is sized to permit the pusher 13 to rotate and slide along the rod 1, upon which the pusher 13 is mounted between the support 3 and a second end 18 of the rod 1. In order to reduce ballooning as the pusher 13 moves along the rod 1, the thickness of the generally disc-shaped structure 14 is extended near the central aperture 15.

Inward from the outer diameter 16 of the pusher 13 is a flange 19 which is sized to hold the inner surface of a ring

EXHIBIT F

PAGE 8 OF 10

US 6,742,509 B2

**3**

airfoil. Although the flange 19 may be continuous, it need not be; there only need be present so much of the flange 19 as is necessary to support a ring airfoil, as illustrated in FIG. 4. The material from which the generally disc-shaped structure 14 and preferably, but not necessarily, the entire pusher 13 is constructed is selected to have a coefficient of friction which will cause a ring airfoil placed on the pusher 13 generally to rotate with the pusher 13. Optionally, the pusher 13 is coated with paint such as PLASTI DIP, which is available from Plasti Dip International of Blaine, Minn., in order to increase the coefficient of friction.

A second end 20 of the first set 7 of resilient bands 8 is attached to the generally disc-shaped structure 14 outward from the central aperture 15; and a second end 21 of the second set 12 of resilient bands 8 is connected to the generally disc-shaped structure 14 outward from the central aperture 15 in a different location 23 from the point of attachment 22 for the first set 7 and preferably, but not necessarily, substantially opposite (across the central aperture 15) to the point of attachment 22 for the first set 7. A preferred method of attachment of the resilient bands 8 when such bands are latex tubing is to wet the tubing with isopropyl alcohol and then push such tubing onto a projection from the pusher 13 and then allowing the isopropyl alcohol to evaporate.

A grip 46 is attached to the pusher 13 in any location where it will not interfere with the rod 1 as it is used to draw the pusher 13 toward the second end 18 and to rotate the pusher 13 and, therefore, the first set 7 and the second set 12 of resilient bands 8. The grip 46 can be any structure that can be used to draw the pusher 13 toward the second end 18 and to rotate the pusher 13. Preferably, however, it is a traditional handle the ends of which are snap fit into the pusher. Another non-exclusive example of an acceptable grip 46 is finger holes formed into the pusher 13.

Preferably, but not necessarily, a bumper 39 is connected to the rod 1 near the support 3 so that said bumper 39 is at least on the side of the support 3 that is toward the pusher 13. Such a bumper 39 cushions the impact of the pusher 13. The bumper 39 can be any shock-absorbing device that is known in the art but is preferably a rounded block of expanded polyethylene. Preferably, the pusher 13 is also made of expanded polyethylene. Expanded polyethylene can be purchased from Marko Foam of Corona, Calif.

Also preferably, but not necessarily, a rod handle 40 is attached to the rod 1 near the second end 18 of the rod 1. Preferably, but not necessarily, this rod handle 40 is in the shape of a traditional pistol grip. Alternatively, however, the rod handle has a portion 41 with a first end 42 that is attached to the rod 1 and extends at an angle from the rod 1. Connected to a second end 43 of the portion 41 is a section 44 that is generally parallel to the rod 1 and contains an aperture 45 to accommodate the wrist of a user.

The rod 1 and the rod handle 40 are preferably hollow and made of high-density polyethylene containing ultraviolet-light inhibitors, which can be obtained from Inplex, LLC of Des Plaines, Ill. A non-exclusive list of alternate material for the high-density polyethylene is either polypropylene or nylon.

Although, any ring airfoil 47 is acceptable for launching with the Ring Airfoil Launching System, preferably the ring airfoil has an RG-15 exterior 48 and a substantially flat interior 49 with a nose 50 that is harder than the body 51 of the airfoil 47. The nose 50 is preferably composed of soft plastic such as KRATON, which is available from GLS Corporation of Arlington Heights, Ill.; and the body is preferably made with expanded polyethylene.

**4**

When the preferred materials are employed, the ring airfoil 47 and the entire Ring Airfoil Launching System have the advantage of being floatable on water.

As used herein the term "preferable" or "preferably" means that a specified element or technique is more acceptable than another but not that such specified element or technique is a necessity.

We claim:

1. A ring airfoil launching system, which comprises:

a rod having a first end and a second end;

a support having a first side and a second side, being attached to said rod, and extending radially outward from said rod;

a first set of resilient bands, said first set having a first end and a second end and having the first end connected to the first side of said support outward from said rod;

a second set of resilient bands, said second set having a first end and a second end and having the first end connected to the second side of said support outward from said rod;

a pusher slidably mounted on said rod between said support and the second end of said rod, said pusher comprising:

a generally disc-shaped structure containing a central aperture sized to permit said pusher to rotate and to slide along said rod and having an outer diameter, wherein said generally disc-shaped structure is composed of material having a coefficient of friction which will cause a ring airfoil placed on said pusher generally to rotate with said pusher and wherein a second end of said first set of resilient bands as well as a second end of said second set of resilient bands is attached to said generally disc-shaped structure at points of attachment outward from the central aperture; and

a flange attached to said generally disc-shaped structure inward from the outer diameter of said generally disc-shaped structure wherein, said flange is sized to hold an inner side of a ring airfoil; and

a grip attached to said pusher in any location where it will not interfere with said rod.

2. The ring airfoil launching system as recited in claim 1, wherein:

the second end of said second set of resilient bands is attached to said generally disc-shaped structure substantially opposite, with reference to the central aperture, to the point of attachment for said first set of resilient bands.

3. The ring airfoil launching system as recited in claim 2, wherein:

said grip is a handle.

4. The ring airfoil launching system as recited in claim 3, further comprising:

a rod handle attached to said rod near the second end of said rod.

5. The ring airfoil launching system as recited in claim 4, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

6. The ring airfoil launching system as recited in claim 3, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

EXHIBIT ___

PAGE 9 OF 10

US 6,742,509 B2

5      6

**7.** The ring airfoil launching system as recited in claim 2, further comprising:

a rod handle attached to said rod near the second end of said rod.

**8.** The ring airfoil launching system as recited in claim 7, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

**9.** The ring airfoil launching system as recited in claim 2, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

**10.** The ring airfoil launching system as recited in claim 1, wherein:

said grip is a handle.

**11.** The ring airfoil launching system as recited in claim 10, further comprising:

a rod handle attached to said rod near the second end of said rod.

**12.** The ring airfoil launching system as recited in claim 11, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

**13.** The ring airfoil launching system as recited in claim 10, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

**14.** The ring airfoil launching system as recited in claim 1, further comprising:

a rod handle attached to said rod near the second end of said rod.

**15.** The ring airfoil launching system as recited in claim 14, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

**16.** The ring airfoil launching system as recited in claim 1, further comprising:

a bumper connected to said rod near said support so that said bumper is at least on a side of said support that is toward said pusher.

**17.** The ring airfoil launching system as recited in claim 1, further comprising:

a ring airfoil having a nose, a body, an interior, and an exterior with the exterior being an RG-15 airfoil, the interior being substantially flat, and the nose being harder than the body.

* * * * *

EXHIBIT F
PAGE 10 OF 10

**From:** cathy [mailto:cathy@zuru.com]
**Sent:** Wednesday, May 19, 2010 7:06 PM
**To:** 'Cindy Baker'; anna@zuru.com
**Cc:** 'Ken - Zing HK'; 'BrianBishop'; 'Zing Toys/Cheryl Bauer'; Steve@Zingtoys.com; 'Pete Cummings'; chimei@nuofeng.gd.cn
**Subject:** 答复: Payment for Tooling; ZM10028, ZM10025

Thanks Cindy!

**Cathy**
**Team ZURU**
Ph   : +86 20 8687 3002
Fax : +86 20 8687 3066

---

发件人: Cindy Baker [mailto:cindy@zingtoys.com]
发送时间: 2010年5月20日 3:05
收件人: cathy@zuru.com; anna@zuru.com
抄送: 'Ken - Zing HK'; 'BrianBishop'; 'Zing Toys/Cheryl Bauer'; Steve@Zingtoys.com; 'Pete Cummings'; chimei@nuofeng.gd.cn
主题: Payment for Tooling; ZM10028, ZM10025

Cathy,
Attached is payment remittance USD $17,100 for tooling.
1. ZM10028       $ 6,800.00
2. ZM10025       $10,300.00

Thanks,

*Cindy Baker*
*'Zing-Gal'*
*Zing Toys, Inc.  PH 503-324-8018*

EXHIBIT G
PAGE 1 OF 3

# Payments

**Your transaction has been successfully processed.**

| | |
|---|---|
| **Transaction Reference Number** | N52000009288 |
| **Pay From** | 809-463797-838 Business Integrated Account USD Savings |
| **Payment Amount** | USD 17,100.00 |
| **Pay On** | 20/05/2010 |
| **Reference** | ZURU |
| **Beneficiary Bank Name** | HSBC Hong Kong |
| **Beneficiary Account Number** | 400-331054-838 |
| **Beneficiary Account Currency** | USD |
| **My Notes** | ZURU INC ZM10025 ZM10028 |

Privacy and Security  |  Terms of Use  |  Hyperlink Policy  |  Sitemap  |  Online Security

© The Hongkong and Shanghai Banking Corporation Limited 2002-2010. All rights reserved.

EXHIBIT G
PAGE 2 OF 3

**From:** cathy [mailto:cathy@zuru.com]
**Sent:** Wednesday, May 19, 2010 5:03 AM
**To:** 'coco'; 'Ken'; Pete@Zingtoys.com; lj@zuru.com; 'Cindy Baker'; 'Mat'
**Cc:** 'Wilson'; 'Kwan Toys'; 'steve'; 'Anna Mowbray'; 'henry'
**Subject:** 答复: Final Quantity of New Tooling Mold order .

Hi Ken,

Please arrange the molds payment tomorrow, total USD17100.00. Thank you!

**Cathy**
**Team ZURU**
Ph   : +86 20 8687 3002
Fax : +86 20 8687 3066

---

发件人: coco [mailto:coco@zuru.com]
发送时间: 2010年5月19日 18:24
收件人: 'Ken'; Pete@Zingtoys.com; lj@zuru.com; 'Cindy Baker'; 'Mat'
抄送: 'Wilson'; 'Kwan Toys'; 'steve'; 'Anna Mowbray'; 'cathy'; 'henry'
主题: RE: Final Quantity of New Tooling Mold order .

Hi Ken,

Thanks for the call today.

Please kindly note all the requested molds have completed and will do Teflon coating tomorrow as per Pete's suggestion. Also we have already sent the 2x molds to ChangeHui more than one week ago.

Thanks!

Hi LJ,

Please kindly organize truck to send the rest molds to NuoFeng as soon as you finish the Teflon coating.

Thanks!

Best Regards!

**Coco Chan**
**Team ZURU**

Ph   : +86 20 86873005
Cell : +86 135 7028 4436
Fax : +86 20 8687 3066

EXHIBIT G
PAGE 3 OF 3

7/22/2010